UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-104

TAMMY SINGLETON                                                                        PLAINTIFF

v.

UNITED STEEL WORKERS LOCAL UNION 550                   DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon a motion by Defendant, United Steel Workers Local Union 550, for summary judgment. [DN 24]. Plaintiff, Tammy Singleton, has responded to the motion. [DN 30]. The Defendant has filed its reply. [DN 31]. Fully briefed, Defendants motion is ripe for review, and for the following reasons, it is **GRANTED**.

## BACKGROUND

Plaintiff, Tammy Singleton, became a member of Defendant, United Steel Workers Local Union 550, in 2009. [DN 1 at 2]. Plaintiff was employed by United States Enrichment Corporation ("USEC") from 2009 until 2014. *Id.* In February 2014, Plaintiff was laid off from USEC. [DN 24-2 at 2]. Although Plaintiff claims she applied for numerous jobs with prospective employers engaged in hiring through the Defendant, she was unsuccessful in securing employment. [DN 1 at 3]. Plaintiff alleges that Defendant discriminated against her in the hiring process because she is female. *Id.* at 3. Plaintiff also alleges that Defendant retaliated against her because she complained about the alleged gender discrimination. *Id.* at 3.

1

Under the collective bargaining agreement ("CBA") between Defendant and USEC, the employer and Defendant must establish a recall listing of laid off employees. [DN 31-1 at 7]. The employer and Defendant are also required to establish seniority listings showing the name of all employees in the order of their seniority ranking in the job classification groups in which the employees hold seniority. *Id.* According to Donna Steele, president of United Steel Workers Local Union 550, "[t]he Defendant maintains records of the classification of members, their hire dates, layoff dates, and recalls." [DN 24-2 at 2]. A laid off employee can only be recalled into positions in which they hold seniority. [DN 31-1 at 5-6.] When two employees both have seniority in a particular job classification, the job must be granted to the laid off employee with the most seniority in the classification they are applying for. *Id.* at 7. Defendant now moves the court for summary judgment, claiming that there is no genuine dispute of material fact regarding either of Plaintiff's claims. For the following reasons, Defendant's motion is **GRANTED.**

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel*

*v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. See *id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996).

## DISCUSSION

### A. Gender Discrimination Claim.

Plaintiff claims she has been subjected to less favorable terms and conditions in her membership with Defendant and has been actively prevented from being provided with employment opportunities because of her gender. Title VII, 42 U.S.C. § 2000e-2(a)(1), makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e-2(a)(1). The employer does not violate Title VII unless there is a discriminatory basis. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993) ("We have no authority to impose liability upon an employer for alleged discriminatory employment

practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated.*").

When the plaintiff fails to present direct evidence of discrimination, as is the case here, courts analyze Title VII disparate treatment claims under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under that framework, the burden initially lies with the plaintiff to establish a prima facie case of discrimination. *See id*. This is established by showing that (1) plaintiff is a member of a protected group, (2) plaintiff was subject to an adverse employment decision, (3) plaintiff was qualified for the position, and (4) plaintiff was either replaced by a person outside of the protected class or was treated differently than similarly situated, non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Assuming it does so, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is merely pretext for unlawful discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999).

In this case, Defendant concedes that Plaintiff can establish the first three elements of her prima facie case. [DN 24 at 8-9]. The parties disagree on whether Plaintiff can establish the fourth element of her prima facie case. Therefore, the Court must determine whether there is a genuine dispute of fact regarding whether Plaintiff was treated differently than similarly situated male union members.

In this case, Plaintiff only held seniority in the classification of janitor/laborer. [DN 30-2 at 18-19]. Therefore, Plaintiff could only be recalled into the janitor/laborer job classification under the CBA. When she was laid off, there were about forty-two other laid off union members who

held more seniority in the janitor/laborer classification than Plaintiff did. [DN 31-3 at 3]. Under the CBA, these forty-two members would need to be recalled before Plaintiff could go back to work at USEC. According to Defendant, no union member with less labor/janitor classification seniority than Plaintiff was recalled by USEC. [DN 31-3 at 3].

Plaintiff claims that three male employees—Bobby Crick, Chris Bencini, and Brian Thompson—were treated better than she was because they were male. These male employees were allegedly hired around the same time as Plaintiff. After the lay-off, the male employees were recalled; Plaintiff was not recalled. But Plaintiff's claim regarding these three male members fails for two reasons. First, Plaintiff has not proven that any of the three male members had less seniority than she did. [DN 30-2 at 26-27]. Plaintiff admits "I don't know that [Crick and Bencini] had less seniority than me because we was all pretty much hired in around the same date." *Id.* at 27. Plaintiff also admits that she does not know whether Thompson had less seniority than her in the janitor/laborer job classification. [DN 30-3 at 15].

Second, Plaintiff does not identify a single male member who was recalled into the janitor/laborer classification. Bobby Crick was laid off and recalled as a carpenter. [DN 31-3 at 3]. Chris Bencini was laid off and recalled as an operator. *Id.* Plaintiff admitted in her deposition that she did not know where Brian Thompson was recalled. [DN 30-3 at 15]. Union President Donna Steele says in one of her affidavits that Thompson was recalled as a maintenance mechanic. [DN 31-4 at 7]. Plaintiff did not qualify to be recalled into a carpenter, operator, or maintenance mechanic job because she did not have seniority in those job classifications. Therefore, Plaintiff has not established that any of these male members were similarly situated to her. Plaintiff does not identify any male member with less seniority than her who is recalled into the labor/janitor classification.

5

Plaintiff also claims that she was treated differently because she was not offered job training opportunities that were available to male employees. But this claim has a fatal flaw: Defendant does not offer job training to employees. [DN 31-5 at 3]. It is the employer, in this case USEC, that is responsible for providing job-specific training to its employees. *Id.* In her deposition, Plaintiff admits that it was USEC who was refusing to train her. [DN 30-3 at 28-29]. Even if it is true that Plaintiff's male co-workers were being offered preference in job-specific training opportunities, Defendant is not responsible.

Plaintiff claims that male employees who were laid off at the same time as her were assigned different layoff dates which allowed them to stay on the union hire list for one more year than Plaintiff was eligible. [DN 24-10 at 3]. But Plaintiff does not name any specific male employees who are similarly situated to her and who were given an extra year on the recall list. Plaintiff directs the Court to her answer to Defendant's interrogatory No. 10 as evidence supporting her claim. In her interrogatory answer, Plaintiff says she "believed . . . male members who were laid off the same time as Plaintiff from USEC had different layoff dates dated one year after Plaintiff, allowing them to stay on the Union hire list for one extra year than Plaintiff is eligible." [DN 24-10 at 3]. But this claim ultimately fails because Plaintiff has failed to put forward any specific evidence that the Defendant took adverse action toward her. The summary judgment standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The burden is on the party opposing the motion for summary judgment to produce evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In opposing a properly supported motion for summary judgment, the nonmoving party must set forth sufficient *specific* evidence to permit a fair-minded jury to return

a verdict in its favor." *Mount v. United States Postal Serv.*, 79 F.3d 531, 533 (6th Circ. 1996) (emphasis added). Plaintiff's answer to Defendant's interrogatory is a general claim, not specific evidence. Plaintiff does not identify any specific individuals who were given different layoff dates. Without a more specific showing, Plaintiff has failed to create a genuine issue of fact for trial. *See Cooper v. Jackson-Madison County Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 953-54 (W.D. Tenn. 2010) (citing *Fueling v. New Vision Med. Labs., LLC*, 284 F. App'x 247, 255 (6th Cir. 2008)). Because Plaintiff has not offered specific evidence of any male members who were similarly situated as her and were assigned a different layoff date, she has failed to state a prima facie case under this theory. *See Spagnola v. Humana, Inc.*, No. 3:09-cv-235, 2010 U.S. Dist. LEXIS 739, *15, 2010 WL 59250 (W.D. Ky. Jan. 6, 2010).

In her response, Plaintiff argues that it was Crick, Bencini, and Thompson who were given later layoff dates. [DN 30 at 8]. The evidence does not support this argument because Plaintiff does not name the individuals in her answer to Defendant's interrogatory. Plaintiff also does not provide evidence that male members were in fact given different layoff dates in her answer to Defendant's interrogatory; she only alleges that she *believes* that they were given different dates. *Id.* Further, Plaintiff has not identified any other evidence on the record that establishes male members were given a different layoff dates. Plaintiff cites to pages 49-50 of her deposition in an attempt to support her argument. [DN 30 at 8]. But on these pages of her deposition, Plaintiff is alleging that Crick, Bencini, and Thompson were hired ahead of her with less seniority, not that they were given different layoff dates. [DN 30-3 at 15]. Further, Plaintiff acknowledges on these pages of her deposition that Crick and Bencini were not recalled into the janitor/laborer classification. *Id.* at 14. Even if Crick, Bencini, and Thompson were the individuals Plaintiff was

referring to in her answer to Defendant's interrogatory, these male members are not similarly situated to Plaintiff because they weren't hired into the janitor/laborer job classification.

Finally, Plaintiff claims that she was treated differently because the Defendant manipulated the recall listing to prevent her from being hired. But this claim fails because Plaintiff has not provided evidence that similarly situated male members were not also either blacked out or on the no-hire list. The only evidence of manipulation on the record is Plaintiff's testimony at her deposition. During her deposition, Plaintiff said that Jim Key, the Union Vice President, told her there was a no-hire list discussed among the Union employers at meetings and that Singleton was on that list. [DN 30-3 at 16-19]. It is unclear from this evidence whether there was a physical list and, more importantly, whether it was USEC or Defendant who created the list. Plaintiff also said that Bobby Harris told her he had seen the recall listing and Plaintiff's name and/or contact information had been "blacked out." [DN 30-3 at 19-23]. Besides the fact that some or all of this evidence may be inadmissible hearsay,[1] it is insufficient to create a genuine dispute of material fact on the fourth element of Plaintiff's claim because there is no evidence on the record that similarly situated male members did not also have their contract information blacked out.

Ultimately, Plaintiff has not presented evidence sufficient to create a genuine dispute of material fact regarding whether she was treated differently than members of the opposite sex. Plaintiff was only eligible to be recalled into the labor/janitor classification, and the record is devoid of evidence that anyone with less seniority in that classification than Plaintiff was recalled

---

[1] In its motion for summary judgment and again in its reply, Defendant argues that all of Plaintiff's evidence regarding list manipulation is inadmissible hearsay and therefore cannot be considered in the Court's summary judgment determination. Plaintiff did not address this argument in her response. Even assuming that the evidence is admissible, Defendant is still entitled to summary judgment. Therefore, it is unnecessary for the Court to determine whether the evidence is admissible.

into a laborer or janitor job. For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

### B. Retaliation Claim.

Plaintiff claims that she engaged in protected activity by complaining about and opposing what she believed to be gender discrimination by Defendant, and that she has not been provided any employment opportunities as a result. Title VII "makes it unlawful for an employer to discriminate against an employee because the employee opposed an unlawful employment practice, or made a charge, or participated in an investigation, proceeding, or hearing related to Title VII." *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993). A plaintiff may prove her Title VII retaliation claim through direct or circumstantial evidence. *Henry v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 162 F. Supp. 2d 794, 800 (S.D. Ohio 2000). This case presents no direct evidence of retaliation, so the Court must apply the *McDonnell* balancing test. *Id.; McDonnell*, 411 U.S. at 802. "[T]o establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The causal connection must be proven by sufficient evidence to demonstrate an inference that, had the plaintiff not engaged in his protected rights, the defendant would not have taken the adverse action. *Id.* If the plaintiff successfully establishes a *prima facie* case of retaliation, "a presumption of unlawful retaliation arises and the burden of production shifts to the defendant to rebut the presumption by

articulat[ing] some legitimate, nondiscriminatory reason for its action." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (citation and internal quotation marks omitted). Then, if the defendant successfully produces a legitimate, nondiscriminatory reason, "the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr*, 710 F.3d at 675 (citing *Abbott*, 348 F.3d at 542).

Plaintiff claims she can establish a prima facie case of retaliation as follows:

> (1) she engaged in complaints on two occasions when she informed Donna Steele that she felt male union members with less seniority had been hired ahead of her; (2) this was a protected activity opposing gender discrimination pursuant to Title VII; (3) she was subjected to adverse treatment later by not being provided any opportunities for employment and by having her contact information "blacked out" so she could not be contacted for employment opportunities; and (4) a causal connection can be made between her opposition and the adverse employment action.

[DN 30 at 9]. Defendant argues that there is no genuine dispute of material fact regarding whether these two phone calls are protected activity.

First, Defendant argues that the phone calls to Donna Steele—assuming they actually occurred—do not constitute a protected activity because she did not make a discrimination charge, or testify, assist, or participate in any manner in an investigation, proceeding, or hearing in connection with an allegedly discriminatory employment practice. [DN 24 at 11]. In other words, Defendant argues that Plaintiff's informal complaints do not constitute a protected activity. The Sixth Circuit "has interpreted protected activity broadly to include complaints to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Simpson v. Vanderbilt Univ.*, 359 Fed. Appx. 562, 571 (6th Cir. 2009) (internal quotations and

10

citation omitted). Pursuant to the Sixth Circuit's broad interpretation, Plaintiff's calls to Steele are not too informal to constitute a protected activity.

Second, Defendant argues that Plaintiff never actually complained of gender discrimination during a phone call with Donna Steele. [31 at 5]. Plaintiff recorded many phone conversations with Donna Steele. Plaintiff has provided Defendant with all of her recorded conversations with Steele. Defendant submitted these recordings to the Court.[2] It is true that none of these recorded conversations mention sex discrimination. Instead, the calls are about Plaintiff's return to work from long-term disability leave. But these recordings do not entitle Defendant to summary judgment because it is unclear whether the sex discrimination calls were ever recorded by Plaintiff. In her response, Plaintiff claims:

> Both of these phone calls are listed in Plaintiff's Response to Defendant's Interrogatories and Requests for Production. [citation to her answer to Defendant's interrogatory]. Singleton *also made other phone calls* to Donna Steele about potentially receiving employment through Defendant with further questions as to why she was not receiving a position. [citation to the phone recordings filed by Defendant].

[DN 30 at 10] (emphasis added). Plaintiff is therefore claiming that the phone calls she is referring to in her response to the interrogatories are not included in the recordings that were filed by Defendant. There is no evidence before the Court that Plaintiff recorded the phone calls where she discussed her belief that she was being discriminated against based on sex, and therefore Defendant is not entitled to summary judgment based on the recordings it filed with the Court.

---

[2] It is not clear whether Defendant has submitted all of the recorded conversations. Defendant has not submitted evidence that Exhibit J to Defendant's Motion for Summary Judgment includes all recorded conversations that Plaintiff submitted through discovery. But because it is unclear whether Plaintiff's sex discrimination calls were ever recorded, this issue is immaterial.

Finally, Defendant argues that it is unreasonable for Plaintiff to believe that she was opposing an unlawful practice because Steele repeatedly explained to her that she could only be recalled into the janitor/laborer job classification. [DN 31 at 5]. Protected activity includes "opposing any practice that the employee reasonably believes to be a violation of Title VII . . . whether or not the challenged practice ultimately is found to be unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). Therefore, the issue in this case is whether a female employee could reasonably believe that the actions alleged in her interrogatory answers— hiring less senior male members and assigning different layoff dates to male members—are unlawful. In her sworn affidavit, Donna Steele states: "In phone conversations with Tammy Singleton, I repeatedly explained she only could be recalled into the labor/janitor job classification." [DN 31-5 at 3]. Further, the CBA is clear that an employee can only be recalled into a job classification where an employee holds seniority. [DN 24-4 at 34]. The clear language of the CBA and the union president's repeated explanations of the recall process cause Plaintiff's belief that the hiring of less senior male members was unlawful to be unreasonable.

Plaintiff's argument that she engaged in protected activity when she called Donna Smith and complained that she "believed . . . male members who were laid off the same time as Plaintiff from USEC had different layoff dates dated one year after Plaintiff, allowing them to stay on the Union hire list for one extra year than Plaintiff is eligible" also fails. [DN 24-10 at 3]. While it is not necessary for Defendant's activity to actually be unlawful to state a prima facie case for retaliation, there must at least be evidence on the record that the Defendant's activity in fact occurred. As discussed above, the only evidence that Plaintiff has identified in support of this claim is her answer to Defendant's interrogatory. *See id.* In her answer, Plaintiff only states that she held a belief that male members were given different layoff dates; she does not assert that the male

members in fact were assigned different layoff dates. *Id.* Further, the evidence on the record does not identify specific male members who were given different layoff dates. Plaintiff's answer is a general claim, not the specific evidence necessary to survive a motion for summary judgment. "In opposing a properly supported motion for summary judgment, the nonmoving party must set forth sufficient *specific* evidence to permit a fair-minded jury to return a verdict in its favor." *Mount*, 79 F.3d at 533. Because Plaintiff has not presented evidence on which the trier of fact could reasonably find for her, Defendant is entitled to judgment as a matter of law. For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED.**

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [DN 24] is **GRANTED.** The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 7, 2019

cc: Counsel of Record.